## Court for the Trial of Impeachments

### AND

## *CORRECTION OF ERRORS,*

### IN THE STATE OF NEW-YORK:

#### FEBRUARY TERM, 1804.

——◆——

## Teunis Bergen and Michael Bergen, Appellants, and Wilhelmus Bennett, Respondent.

ALBANY, 1804.

Bergen & ano.
v.
Bennett.

THIS was an appeal from the decision of his Honor the chancellor, permitting the respondent to redeem. The facts, as they appeared from the bill, answer, and testimony, were these. On the 12th of April, 1776, Wilhelmus Bennett, deceased, executed to John Vanderbilt, a bond for £600, payable in one year, with interest at 5 per cent. ; and, for further security, he also gave a mortgage on 67 acres of land, situated at a place called Gowanes. Shortly after this, on the 8th of November, 1776, the mortgagor died intestate, leaving the respondent Wilhelmus, then a minor of fifteen years of age, his eldest son and heir at law. The usual power to sell was contained in the mortgage, which, *together with the power*, was, on the 10th of April, 1777, registered in the office of the clerk of the county, *in the book for registering mortgages.* In the registry the mortgage was, as usual, abbreviated; but the power was, though *not recorded as deeds usually are*, set forth in the registry of the mortgage, in hæc verba, excepting as to

*A power to sell contained in a mortgage deed, on default of payment, is a power coupled with an interest, and does not die with the mortgagor. If such power be recorded in the book for recording mortgages, it is a compliance with the act. A sale under*

B

ALBANY, 1804.

Bergen & ano.
v.
Bennett.

Such power is a species of foreclosure, and under it a mortgagee may himself make a bona fide purchase. After a lapse of sixteen years from the time of such sale, known to the mortgagor or his heir, who, during that period, has remained passive, a redemption will not be allowed.

the latter part, declaring the sale to be a perpetual bar, &c. which was totally omitted. On the 13th of April, 1781, the appellant, Teunis Bergen, purchased the bond and mortgage for a bona fide consideration of £700. In 1783, the respondent left this state and went to Nova-Scotia. On the 11th of March, 1804, the appellant Teunis commenced the publication of a notice of the sale of the premises, under the power contained in the mortgage. The notice did not specify the boundaries of the land mortgaged. It began on the 11th of March, 1784, by an advertisement in a weekly paper, and was, after the first week, regularly continued in the supplement, which was the usual mode observed by the printer. The publication of the notice appeared, from a file of the papers, to have been duly made, except as to the 3 last days ; but for those days the paper or supplement was missing. A copy also of this advertisement was, six months previous to the sale, fixed up on the outward door of the court-house of the county in which the lands lay ; and there remained until after the sale, on the 11th of September following. At this, one Christopher Bennett, a schoolmaster in the neighbourhood, officiated as auctioneer, in consequence of a request from the appellant Teunis Bergen. The conditions exhibited at the time of Sale were as follows : " Brooklyn Township. Articles of the Vendue for the sale of " the land and meadow land, belonging to the Estate of Wil- " helmus Bennett, deceased, containing 60 acres, more or " less, held this 11th day of September, 1784, by Teunis Ber- " gen. Art. 1. That the highest bidder is to have the lot or " parcel of land when struck off to him. 2. That the Indian " corn and all the planting produce thereon is to be excepted. " 3. That a drain of ten feet wide for the Collick be excepted. " 4. That 100 rails of the cross fence of the corn be excepted. " 5. That the money bid for the land is to be paid at the ex- " ecution and delivery of the writings. 6. That in case the " person or persons, to whom it is struck off as aforesaid, can- " not produce or procure a sufficient security, then and in " such case, the same lot or parcel of land shall be put up " again ; and if the same is then sold for less, the first buyer " shall make up the deficiency ; if sold for more, the first buyer " shall have no benefit by the sale." At the time of the vendue, no persons were present but the auctioneer, the appellants, one Cowenhoven, and a tenant who lived on the land.

There was but one bid, which was by the appellant Michael Bergen, for £700; and, after having waited 2 hours, to see if any person would come and offer more, it was struck off at that sum to him; and he, having attended to purchase on behalf of the other appellant Teunis, after a conveyance duly executed to him, reconveyed to Teunis.

It appeared that the premises were not, at the time of sale, worth more than the principal and interest due; one Cowenhoven, to whom the land was offered, and who was a creditor of the mortgagor, having declared he would not give the amount of the bid. In 1788 the respondent came back to this state, and on the 3d of February, 1800, filed his bill. The respondent in support of the decree, alleged in his case, that the sale could not bar the redemption for which he prayed, as it was null and void, on the following grounds. 1st, Because the power to sell, contained in the mortgage, * " *was not recorded as deeds* † *usually are*," before the execution of the conveyance to the purchaser. 2d, Because the notice of the sale was uncertain, and that the directions of the statute were not complied with in the publication of it. 3d, Because the conduct of the appellant Teunis Bergen, touching the sale, and the proceedings preparatory thereto, were actually fraudulent. 4th, Because the power to sell, contained in the mortgage, expired with the life of the donor. 5th, That the mortgagee was a trustee for the mortgagor, and as such, could not be a purchaser of the property, which he himself sold in that capacity.

Chancellor. Mr. President, The complainant has filed his bill for a redemption; to which the defendant answered, and a number of depositions have been taken, disclosing the circumstances stated in the case. On these, several questions have arisen, which have been very fully discussed by the counsel for the parties; but all of which, the first excepted, relating to the manner in which the power has been executed, must necessarily depend upon its validity at the time of such execution. The first of these questions, then, in the natural order in which they present, is, whether the power contained in the mortgage, expires with the life of the mortgagor? In the English code, no principles are to be discovered, which have been applied in their courts to bar an equity of redemption, *by the mere act of the mortgagee*, without the aid of judicial intervention. This

ALBANY, 1804.

Bergen & ano. v. Bennett.

* 1 Rev.Laws, 482. S. 6.
† See the act relating to recording deeds. Ibid. 478.

ALBANY,
1804.

Bergen & ano.
v.
Bennett.

1775.
L. N. Y. 480.

Powell on
Powers, 4.

device appears of native growth, originating from the circum-stances of this country, and probably, principally from the dis-parity between the actual product, and estimated value of real estates.   This may have rendered necessary a more summary and less expensive mode of barring the equity of redemption, than that which obtained through the medium of Chancery, a desirable object.   It seems that previous to the year 1775, it had been a practice to introduce into mortgages, clauses au-thorizing a sale by mortgagees, and that many estates were then held under such sales.   A statute was passed, reciting this cir-cumstance, and declaring that *no good* and bona fide sales of mortgages, lands, tenements, or hereditaments, made or to be made by mortgagees or others, authorized thereunto by special power for that purpose in due form of law, from him or them who had the equity of redemption, shall be defeated to the pre-judice of the bona fide purchasers thereof, in favour of, or for the advantage of any person or persons claiming a right of re-demption in equity.   To this was added a proviso, that this should not prejudice prior liens *by mortgages executed before such sale,* judgments, or decrees in equity.   This statute saved the interest of mortgagees deriving title under mortgages exe-cuted before such sale, and all creditors, " to whom the mort-" gaged premises, or any part thereof, was *before* bound by " any judgment at law or decree in equity."   It appears to have been intended as a declaratory act, and if so, the proviso seems to contain a legislative declaration, that the power to sell did not irrevocably rest, *as a right,* in the mortgagee ; for, if it did, the after acts of the mortgagor, or the judgments and de-crees rendered against him, subsequent to the execution of the power, could not detract from the right of the *mortgagee, empowered to sell;* that it was intended they should, is to be collected from the consideration that the word *before,* in the latter clause, must clearly relate to the sale, and not to a pe-riod anterior to the execution of the power.   But it may be ta-ken in that sense, or as intended for greater caution, and as leaving the power to be construed as respects the cases ex-cepted, without being affected by the statute.   In either case, it cannot be considered as affecting the question in aid of the power.   The powers treated of by Powell, in his admirable treatise on that subject, were, as he states, originally mere mo-difications of uses, whatever was equitable in which, the sta-

tute of 27 H. 8. transferred to law : thus he distinguishes powers in relation to donees, and collateral powers, as simply relating to *uses and trusts*, and the enabling and restraining powers, as mere branches from the same generic trunk. I take it therefore that the doctrine deduced from Powell, as directly applying to the present subject, cannot be considered as correct, and that the principles by which it is to be tested, are to be sought for elsewhere. If the power in question was a *naked authority*, substituting the mortgagee or his representatives to represent the person of the mortgagor, it is conceded it must expire with the life of the person creating it. But it is insisted, an inseparable connexion exists between the power and its object, *the estate ;* that the duration of the former, must of necessity be commensurate with that of the interest in the latter, and that it can only be exhausted by its actual execution ; or that the power is in the nature of a covenant, running with the mortgaged premises. These positions I shall consider separately. As to the first : If a second mortgage was executed, intermediate the execution of the power, and the sale under it ; the second mortgagee is supposed to acquire an equitable lien, for the satisfaction of his security, on the mortgaged premises, if the fund mortgaged is more than adequate to the discharge of the first. An equity of redemption is considered as a subject to which a lien arising from a judgment, or decree, may attach. In neither case, can the subsequent incumbrances be considered as united in interest with the first. On the contrary, their relative situations show there must always be a collision, and frequently a direct opposition of interest. On the footing of a revocation of an authority, their situations are compatible with the practice which has prevailed on the subject ; but if the power is considered as an absolute vested right, the subsequent mortgages, judgments, and decrees, must be effectually over-reached by the sale, which must undoubtedly, on that ground, relate to the period when the right was acquired. The situation of the mortgagor and mortgagee at law, *if the authority is to be tested by strict legal principles*, operates against considering the power as an interest combined with the estate granted ; for, to all legal purposes, the fee, upon the execution of the mortgage, vested in the mortgagee, subject to the usual defeasance. At law, therefore, the title acquired by the purchase under the power, could only be cumulative ; and if so,

ALBANY, 1804,

Bergen & ano. v. Bennett.

Co. Lit. 52. 2 Roll. Abr. 9. cited 1 Bacon, 204.

the revesting the estate, depending upon the contingency of payment in compliance with the condition, the interest of the mortgagee would be destroyed by such payment, and in either case the power must be rendered inoperative. If such is the situation of the parties at law, what reason can there be for an equitable interposition? The principles that this court pursues and cherishes will prevent it from relaxing the rules of law, unless it be for the purpose of promoting substantial justice. The intent of the parties has always been permitted to have a powerful effect in the construction of deeds; but though the intent in this case to delegate to the mortgagee, *his executors, administrators, and assigns,* a power to make a sale, is clearly to be inferred, it does not afford as satisfactory an inference *that the representatives of the mortgagor were intended* to be equally bound with himself, to continue that power; and if not, there is no equitable principle on which the power can be extended beyond its mere legal operation. I have not been able to discover, that the doctrine contended for, *that the power is to have equal duration with the estate,* has been recognized in any instance of this kind. Nor do I know a case, analagous to this, in the books; and from the industry and ability of the counsel who argued this cause, as well as my own fruitless researches, I think I may venture to say that none exists. Wherever it rests in the discretion of the court, to give a more liberal or restrained construction to the acts of parties, it is consistent, with the principles which regulate the conduct of this court, to examine the tendency of the several constructions which they will admit, and to mingle the inconveniences of adopting one or the other of those presented, as an ingredient to preponderate the scale, otherwise equally poised. By giving these powers a duration beyond the life of the mortgagor, they may in many instances disinherit his heirs; for here the parol cannot be permitted to demur; here is no saving of the rights of an infant, till his full age. The sale, if admissible at all, must be absolutely conclusive. By considering the right of sale as blended with, and co-extensive in its duration with the estate, subsequent incumbrances, by judgments, decrees, and mortgage, must be completely at the mercy of the first mortgagee. For if this right is a vested right, assimilating to that of property, every sale under it must have a retrospective effect, and completely destroy all incumbrances, intermediate to its acquisi-

tion, and the sale under it. These are consequences of great importance, which I think this court cannot countenance; but on the contrary, ought to resist, especially as the primary object of the mortgage, *the enabling the mortgagee to hold the land mortgaged, as a pledge for the payment of the debt,* is thus defeated to the prejudice of the mortgagor's representatives, and as devices calculated to bar the equity of redemption, which, as susceptible of being wrested to oppressive purposes, ought to be leaned against as inconsistent with the original intent. Though this, I believe, is unexplored ground, I have very little hesitation in saying, that from my view of the subject, the doctrine of irrevocability cannot be sanctioned. As to the second position, that this power is to be taken as a covenant running with the mortgaged premises, there are no words of covenant. It imports to be a new grant of a power; it is a device intended to foreclose the mortgagor, without the intervention of judicial examination; and, if a covenant, it must become a subject of such examination, before it can have complete effect. If, as this clause is contained in an indenture, it is to be considered as the words of both parties, it might perhaps be construed a covenant *at law,* but that would not better the situation of the defendant; for the mortgage vests the estate in the mortgagee, and his heirs; the power is to him, his *executors, administrators, and assigns.* This, if a covenant, could not run with the land; for to effect this, there ought to be a privity of estate, between the representatives on whom the power and the estate would devolve, upon the death of the original parties; here the heirs of the mortgagee, by the limitation of the estate would take it, but the right derived from the power would pass to the executor; and thus the instant the mortgagee died, the connexion between the estate and the persons authorized to execute the power, would dissolve. A stronger reason, for not suffering it to conclude the heirs, is, that the defendant's title originated in a mere personal charge, and the same reasons which have already been given against a liberal extension of a power, would operate as forcibly not to extend the covenant by implication. If however it was to be considered as a covenant, binding on the heir at law, I should not be disposed to exert the powers of this court, to aid in concluding the mortgagor's representatives, as the estate is still in the hands of the representative of the mortgagee, by

ALBANY,
1804.

Bergen & ano.
v.
Bennett.

giving efficacy to the covenant here. It would be contrary to what I conceive to be the established principles in this court, which are to endeavour as much as possible to compel the parties to adhere to the true spirit and meaning of their original contract in cases of mortgages, *the security of the sum advanced to the mortgagor.* Some other points, involving considerations of great interest and extent, as to the doctrine of mortgages, were subjects of discussion on the arguments of this cause, but thinking, as I do, *that the power contained in the mortgage would not warrant the sale,* it would be useless to travel through these points, which merely relate to the mode of its execution. Upon the whole, I am of opinion that the complainant ought to be permitted to redeem ; that it ought to be referred to a master to state an account between the parties, of the amount of the principal and interest due on the mortgage, the clear annual value of the mortgaged premises, and the nature of the improvements made by the defendant.

Bogert for the appellants. The respondent has lain by 12 years with the property under his eyes. In that time he never makes any application to redeem. He is silent till the premises are improved at an enormous expense, and have risen greatly in value. This is like waiting for a rise in stock, after forfeiture of the mortgage, 2 Atk. 303 †. The lapse of such a period, as in the present case has taken place, is, we contend, when a person is on the spot, an acquiescence in what has been done. If not *that,* at least a laches, against which this court will never relieve. It is not necessary at this distance of time to prove continuance of the notice on the court-house door, and every minute exactitude of publication. It is enough to show it generally, or even once, as under the absconding debtors' act. The only intermission in advertising is of three days, and for those the papers are wanting. But, without them, the six months are complete ; for, in legal acceptation, unless when otherwise expressed, a month in a statute means according to lunar, and not calendar computation. 1 Com. Di. 503 (B.) 1 Black. Rep. 450†. 6 D. and E. 224 ‡. It is sufficient in any notice of the kind in question, to state the quantity of the land, the owner's name, the township and county, and the incumbrance under which sold. A specification of boundaries would not, to the community at large, render it more precise. The power is not a distinct deed, but part of a mort-

† Lockwood v. Ewer. But had no interest been paid or demanded, the very time elapsed would, in the case alluded to, have been a bar. on a mortgage of Stock, a foreclosure is not necessary. See King v. Dupine, *n.* (2) 2 Atk. 603.

† Talbot v. Linfield.
‡ Lacon v. Hooper. 1 Esp. Rep. 246. S. C. But if it relate purely to mercantile trans-

gage, and must therefore be registered or recorded as that is. I use the words as synonimes, because we find in Varick's edition, page 3 of the appendix, they are used as synonimous. Besides the object of the act is directed to third persons ; it was framed for the benefit of purchasers, and not of the mortgagor, except as to that part of the clause which confines to persons of 25 years of age and upwards, the right of giving such powers. The provision of having the power recorded, before execution of the conveyance, shows it is meant only as evidence of title, in the purchaser, to establish his irredeemable right in the land. The English authorities demonstrate, that with them, register acts are only for the benefit of buyers to give notice of charges. The preamble of our act establishes a similar intention in our legislature. Therefore this, like all other statutes, is to be construed only with a view to suppress the mischief, and advance the remedy. The sum due on the mortgage at the time of sale, was £924 ; the refusal of Cowenhoven to take it at £700, does away all charge of fraud ; nor does the non-attendance of persons at the vendue, afford room to infer the existence of any ; the very amount of the incumbrance might keep them away, this being apparent in the notice. As to the power, *that* could never die with the donor. He could not have revoked it in his life. It is annexed to the security. In the common case of a power, accompanying an assignment of debts in satisfaction of a demand, it is irrevocable * ; and that which cannot be revoked, survives. It is plainly a power coupled with an interest, and therefore runs with that interest. 3 Atk. 714 †. 1 Vez. 306. S. C. 1 Bac. Abr. 321. 2 P. Will. 120 ‡. The injury which it is apprehended the heir might sustain, can have no weight ; for, as the ancestor might at once have sold absolutely, so he may order it to be done at a future day. He had complete dominion over it, and had a right to bar any, or all of his posterity. By the words of his contract, he has agreed to do this, on the happening of certain events. That the mortgagee is trustee for the mortgagor, is only true sub modo, as to the surplus. But allowing it to be so, there is no positive rule against a trustee's purchasing the subject matter of his trust. Whether the purchase will be valid or not, will depend on circumstances. 5 Vez. J. 678 §. The rule however can never apply where the trustee stands in the relation of cestui que trust also. In this situation a mortgagee

ALBANY, 1804.

Bergen & ano. v. Bennett.

actions, the term then means a calendar and not a lunar month. Therefore, in charter-parties it has the calendar acceptation. Jolly v. Young, 1 Esp. Rep. 186. And on a decree to foreclose at a certain period, the computation is by calendar and not by lunar months. Barn. 324. 2 Eq. Ca. abr. 605. pl. 38.

\* Walsh v. Whitcomb, 2 Esp. Rep. 565. S. P.

† Hearle v. Greenbank.
‡ Eyre v. Countess of Shaftsbury.

§ Campbell v. Walker.

must be viewed, as he is interested to the amount of his mortgage, and bound to take care the estate is not sold under the amount due upon it. This distinction was taken in the cases of Alaire v. Munro, and Le Roy v. Vreeder et al. Besides, the sale is under a statutory provision, meant to have the effect of a foreclosure. This, therefore, is in some degree a purchase under a judicial proceeding, and had it been before a master in chancery, by virtue of an order of court, there could be no doubt on the subject. The present mode was intended by the act, to be in lieu of a bill to foreclose ; it is therefore attended with the same consequences. The redemption then ought to have been sought within 5 years. Lockwood v. Ewer. 2 Atk. 303. A purchase by executors of a mortgagee through the intervention of a person who acted as trustee for them, was not impeached. Tooke v. Hartley, 2 Bro. C. R. 126.

Hamilton and Tomkins contra. The power in the mortgage has been registered in the customary manner adopted as to mortgages themselves. The act is specific that they shall be recorded previous to the execution of the conveyance, " as " deeds usually are." We all know this is in a book kept for the purpose, and in hæc verba. This too has been the practice, and communis error facit jus. It is a cotemporaneous exposition of the law. The intent of the legislature we cannot inquire into ; we see what they have ordered. It would seem that the legislature contemplated some mode distinct from that prescribed for mortgages. It is an essential pre-requisite to the execution of the conveyance, and not to be dispensed with. The proceedings under the power being in lieu of a bill to foreclose, it is necessary strictly to adhere to every form, however minute. Every compliance must be made to appear. The deficiency of proof in establishing the notices required by the act, renders the sale absolutely void ; and, as the notice on the court-house door was cut from a newspaper, allowing the publication in the paper to have been for six months, the notice on the door could not have been affixed for that period. Besides, it was in a supplement ; and a supplement to a paper is not the paper itself. This exactitude is indispensable, because the law operates against a peculiar favourite of chancery. A favourite so great, that any clause, restraining the right of redemption, will ever be set aside, as repugnant to the original object of the parties, and contrary to the nature of a mortgage,

which in equity is regarded merely as a security for money lent[*]. If therefore it be in a deed, it is viewed as the result of an undue influence over the mortgagor, arising from the power which a lender naturally has over the person borrowing. On this account no limitation of time, short of 20 years, can prevent the exercise of this right, which is thus circumscribed, in analogy to ejectments at law, to preserve an uniformity of practice in all that relates to land. The foreclosure having taken place, is immaterial, if the property, at the time of filing the bill to redeem, be worth more than the principal and interest due. A boundary is as necessary a description of an estate as a county or town; and the articles of sale vary the quantity from that mortgaged. These and the reservations of the corn, &c. tended to lessen the value of the premises. They form one of many badges of fraud, apparent from the conditions of vendue, and the appointment of a schoolmaster as auctioneer. The mortgagee is a trustee, and emphatically so for the mortgagor. It is a settled principle that a trustee cannot purchase the object of his trust. 2 Eq. Ca. Abr. 741. Holt v. Holt[†]. 1 Ch. Ca. 190. Whaley v. Whaley,[‡] 1 Vern. 484. Whitacre v. Whitacre, Ca. Temp. King 15. 61. Whelpdale v. Cookson, 1 Vez. 9. Crowe v. Dallard, 1 Vez. J. 215. Campbell v. Walker, 5 Vez. J. 678 to 682. Ibid. ex parte Reynolds, 707-8. This last case, which also refers to ex parte Hughes & ex parte Dumbell, 6 Vez. J. was this : An assignee under a commission of bankruptcy, purchased the estates of the bankrupt at auction; they were ordered to be resold, from this general principle, that an assignee could not be a purchaser. Here the characters of trustee and cestui que trust were united, yet held that no purchase could be made, the permission of a court of chancery being necessary to sanction the transaction. In the case now before the court no purchase could be valid, because the power under which the sale was made, had determined by the death of the grantor. Co. Litt. Sec. 66. " If a man " maketh a deed of feoffment to another, and a letter of attor- " ney to one to deliver to him seisin by force of the same " deed, yet if livery of seisin be not executed in the life of him " which made the deed, this availeth nothing." The power was there collateral to the land, and so here; for it goes to the executors of the mortgagee, while the land would descend to

ALBANY, 1804.

Bergen & ano v. Bennett.

[*] Jason v. Eyres, 2 Ch. Ca. 33. Howard v. Harris, 1 Vern. 33. 190. Kilvington v. Gardiner, cited in Howard v. Harris. Willet v. Winnel, 1 Vern. 488.

[†] The only point in that case relating to trust is, that if a trustee of a term surrender and take a further term, it shall be for the benefit of the ce-tui que trust.

[‡] An executor, trustee, renewed a lease in his own name, and after mortgaging it, assigned the equity of redemption to a trustee to pay his own debts. The trustee sold to a purchaser with notice of the original trust, the purchase set aside.

ALBANY,
1801.

Bergen & ano.
v.
Bennett.

* But the heirs
of the mort-
gagee would be
merely trus-
tees for his ex-
ecutors, Ellis
v. Guavas, 2
Ch. Ca. 50.
Tabor v. Gro-
ver, 2 Vern.
367.
Wood & al.
cited, 2 Vern.
193. Turner
v. Crane, 1
Vern. 170.

his heirs *. It was therefore a mere legal authority, between which and a power there is a technical distinction. These latter took their rise from, and were created by the statute of uses. Allowing however that the power did survive, it ought to have been strictly pursued, and every exception in the articles exhibited at the time of the auction, was, if not a fraud, at least a violation. None of the cases cited touch the present; Lockwood v. Ewer was a case of a mortgage of stock. The determination was, that on such an interest there was no equity of redemption. In the other case cited, there had been a lapse of thirty years after foreclosure. Tooke v. Hartley, was a case of a lease for years, and there the foreclosure had destroyed all privity between the parties.

Troup and Benson in reply. A principal question is, have the statutory provisions regarding the sale under the mortgage been complied with? All acts in pari materiâ, are to receive a similar construction. The laws of '74 and of '53 are in pari materiâ. In that of '53, the words registering and recording are used as synonimous; therefore in that of '74 they must be considered as synonimes. The act is silent as to the book where these powers are to be recorded, and as the provision must be for the information of persons wishing to purchase, convenience requires it should be in that book where the mortgages are registered. The cotemporaneous exposition, and the communis error relied on, are in favour of this position; for by a certificate from the clerk of the county in which the mortgaged premises lie, but one instance is found of the mode contended for by the respondents; whereas, twenty and upwards occur of that for which we insist. The advertising the notice for six months is well proved, though the papers in which it appeared are missing; for when written evidence is lost, the resort is always to parol. The exceptions were all in favour of the mortgagor, for what was excepted now remains; and as to the corn, &c. the lands were in the hands of a tenant, who, though his tenancy was at will, could not be deprived of his emblements, on the landlord's determining the tenure. The main question however, for all the others are but of minor importance, is, whether the power to sell contained in the mortgage, was revoked by the death of the mortgagor? The rule is, that a naked authority is revoked by the death of the donor; but

an authority coupled with an interest, survives to the donee. A naked authority is one granted without consideration, vesting no interest in the donee, and to be exercised for the benefit of the donor. This is the kind liable to be revoked by him, and expiring on his decease. The authority in this case is of a different kind. It is founded on a valuable consideration paid, vests an interest in the mortgagee, and for his benefit it is to be exercised. This is the species which cannot be revoked. A mortgage gives a conditional estate in fee simple. To render it absolute, it was necessary to recur to chancery. This being attended with expense and delay, was thought a grievance, and to redress it, the power of sale came to be inserted. It is, therefore, nothing more than the grant of a special action to compel payment of the money, and this for a valuable consideration. If a special action or remedy be given, it carries to the donee an interest to effect the object of the grant, which was *here*, to raise the money due to him in a summary way. It becomes, therefore, a part of the original contract, and is parcel of the security itself. As such, it cannot be revoked by the donor. If it could, he would be able to act against, and defeat his own grant. From this he surely ought, by his own deed, to be estopped. As it is purchased for a valuable consideration, it must survive ; for no grant of an interest to a grantee can cease to operate by the death of the grantor. The mortgage works as a conditional conveyance in fee simple. The office of the power is to change the estate into an absolute fee. Where an estate is created with a power to enlarge that estate, can it be viewed in any other light than as a part of that estate? It is co-existing and commensurate with the estate—necessarily, therefore, an authority coupled with an interest, which of course survives. In the position cited from Co. Litt. the letter of attorney was to a third person, without consideration : here it is to the mortgagee himself, purchased and paid for by him. Besides, the power to give livery must, like a warrant of attorney to confess judgment, be executed in the name of the grantor; which, after he is dead, cannot be done. This is not the case with the power in a mortgage ; for the legal estate being in the mortgagee, the conveyance is in his name. The reason why it is to him and his executors, is because the mortgaged premises are considered as personal estate. The Eng-

* But note,
that in England the power
of selling irredeemably
without the intervention of a
court of equity, is doubted.
See 1 Pow. on
Mort. 14.

lish jurisprudence furnishes nothing analogous to these powers. But even under their system it has lately been the practice to convey the mortgaged premises to trustees, in trust after forfeiture to sell for payment of the mortgage money. The principle with them is the same as with us, to save the expense of a chancery suit*. Our statute must be so interpreted as to render the sale it authorizes effectual. If the mortgagee has not the right to fairly purchase, it would be defeated. It is often for the interest of the mortgagor that the mortgagee should buy. Should only one half the money due be offered, and he be restrained from bidding, the person of the mortgagor, if alive, would be liable; if dead and insolvent, must the mortgagee stand by and lose his money? To impeach a purchase by a trustee, fraud, or making a profit, must be shown. 3 Vez. J. 749, the chancellor, speaking of this rule against permitting trustees to purchase, says, " I do not recollect any case where the mere abstract " rule came distinctly to be tried, abstracted from the consider- " ation of advantage made by the purchaser. It would be " difficult for such a case to occur; for, unless advantage is " made, the act of purchasing will never be questioned. The " rule is laid down not very correctly in most of the cases " where you find it. It is stated as a proposition, that a trus- " tee cannot buy of a cestui que trust. Certainly that naked " proposition is not correctly true." The full value was given here, as appears from the testimony. The reason why redemptions of mortgaged premises are so much favoured in England, does not apply to this country. Their lands are under rent, and produce an annual value. Ours afford no advantage, but from the enjoyment of the property itself. It is, therefore, a matter of easy calculation, to know when an estate can redeem itself, and whether worth more than the sum due. To discharge land from a mortgage, we have no mode but by a sale of the land itself. This is contemplated by the parties at the time of their original contract, and was the cause of introducing the power now in question. The case cited from 5th Vezey, J. is not applicable to the present. An assignee under a commission is not a trustee for himself only, but for others also: when he purchases, he therefore will not be permitted to exclude the other cestui que trusts from the benefits which they may have a right to. They say, " as you purchased to save " yourself, you must do it for us too." But had the purchase

been on behalf of all the creditors, it could not have been dis-
turbed; for the bankrupt, it is to be remarked, was not the par-
ty who complained. A strong argument against the decree, is
the impossibility of going into an account of the labour, im-
provements, and expenses of the mortgagee.

Per curiam delivered by Kent, J. This case comes before
the court on an appeal from a decree of the court of chancery,
that the respondent be permitted to redeem. The reason as-
signed for the decree was, that the power to sell expired with
the life of the mortgagor. This doctrine, if sound, renders it
unnecessary to discuss any of the other points. If the power
was extinct, the sale was null, and the right of the respondent
to redeem exists in full force. It is proper therefore to turn
our first attention to this point; and, although my examination
of it has led me to a different conclusion, I have made it with
the deference and respect due to the court which pronounced
the decree. It is admitted that a naked authority expires with Co. Litt. 52. b.
the life of the person who gave it; but a power coupled with an 1 Sid. 6.
interest is not revoked by the death of the grantor. In my
opinion the power contained in the mortgage is of the latter de-
scription. A power simply collateral and without interest, or a
naked power, is, when, to a mere stranger, authority is given of
disposing of an interest, in which he had not before, nor hath, Vide Powell on Powers, 8.
by the instrument creating the power, any estate whatsoever. 10. 12. But-
But when power is given to a person who derives, under the ler's note, 298, to lib. 3 of Co.
instrument creating the power, or otherwise a present or fu- Litt. Hale,
ture interest in the land, it is then a power relating to the land. Ch. Baron. Hard. 415.
These last powers are subdivided into powers annexed to the es-
tate, and powers in gross. Both are considered as powers
with an interest, because the trustee of the power has an inter-
est in the estate, as well as in the exercise of the power. If, Hardress, 415.
as one of the old cases expresses it, the person clothed with the
power hath at the same time an estate in the land, the power is
not collateral, because it savours of the land. The power now
in question answers exactly to this definition of a power with
an interest, because the mortgagee has at the same time a vest-
ed estate in the land, and it does not answer at all to the defi-
nition of a power simply collateral; for that is but a bare au-
thority to a stranger, who has not, nor ever had any estate
whatsoever. I might, perhaps, rest satisfied with giving this
description of the two powers, drawn from approved authority;

ALBANY,
1804.

Bergen & ano.
v.
Bennett.

Co. Litt. 113.
a. 181. b. 236.
a. 3 Salk. 277.
Pow. on Devi-
ses, 291 to 310.

but I think the point is susceptible of more precise and definite illustration. If a man, by his will, directs his executors to sell his land, this is but a bare authority without interest; for the land, in the mean time, descends to the heir at law, who, until the sale, would at common law be entitled to the profits, and, being but a naked authority, if one executor dies, the power at common law would not survive *. But if a man de- vises his land to his executors, to be sold, then there is a power coupled with an interest; for the executors, in the mean time, take possession of the land and of the profits. In this case, as the estate, so also the trust, would survive to the surviving ex- ecutor. There is a very striking analogy between this case, of a devise of land to executors to be sold, and a mortgage of lands with a power to sell. In both cases, the estate passes to the person clothed with the power, and in both cases the power is given in trust, to answer a specific purpose. I cannot discern any distinction between the cases, sufficient to render the power in the one instance naked, and in the other coupled with an in- terest. It is not a power with interest in the executors, be- cause they may derive a personal benefit from the devise; for a trust will survive, though no ways beneficial to the trustee. It is the possession of the legal estate, or a right in the subject, over which the power is to be exercised, that makes the interest in question; and where an executor, guardian, or other trustee, is invested with the rents and profits of land for the sale or use of another, it is still an authority coupled with an interest, and survives. It has been thus frequently adjudged. This case also is still more analogous to the one of a conveyance of pro- perty by way of pledge, or in trust, with an agreement for the mortgagee to sell in case of default. This is a practice known in the English law, and it was taken for granted by the lord chancellor, in the case of Tucker, administrator, vs. Wilson, that where there existed such an agreement, the mortgagee might sell after the death of the mortgagor. It seems to have been admitted, not to have been competent for the mortgagor to revoke this authority to sell, because it was granted for the benefit of the mortgagee. He might perhaps embarrass the execution of the power, by a subsequent mortgage or judgment, but the power would still remain in full force, although the land, in the hands of the purchaser under the power, might be- come subject to such subsequent lien. In short, this power is

1 P. Wil. 261.
1 Bro. Par. Ca.
494. It was a
case of absolute
conveyance of
stock to secure
money lent. In
all such cases,
foreclosure is
unnecessary, a
sale of the stock
being exactly
the same thing.
Lockwood &
al. v. Ewer, 2
Atk. 303.

* See the note (2) of Mr. Hargrave on this point, in Co. Litt. 113. a.

altogether different from that of a mere naked authority: the latter is no better than a letter of attorney given to a stranger to the estate, as in the instance given by Coke, of a letter of attorney to make livery of seisin. This is revocable by the grantor at his pleasure in his life time, and is absolutely revoked by his death. The grantee of such a naked power, having no interest connected with the power, has, of course, no interest affected by the revocation. The present power is in every view distinct from the other. I conclude, therefore, that the power to sell was not revoked by the death of the mortgagor, and that the decree cannot be supported on the ground that was taken in the court below. I have bestowed some pains upon this question, because I am of opinion that the grounds of a definitive decree in chancery, resting upon what is assumed to be a principle of law, ought not to be questioned and overturned without much care and consideration. It remains to see whether any of the other points, that were raised by the counsel upon the argument, will bear out the decree. It is contended, that the power was not recorded according to law. The act directs, that all powers to mortgagees, for making sales in fee, shall be acknowledged, proved, and recorded as other deeds usually are, before the conveyances for the sale be executed. I incline to think the act was complied with. The power was registered in the book of mortgages. The subject matter of the whole act is mortgages; and, in the preceding part of it, it speaks of deeds with a defeasance in a separate writing, and of conditional deeds, and declares them to be the same as mortgages. It is no violent construction, therefore, to consider the words, recorded as deeds usually are, to refer to mortgage deeds, they being the only deeds within the purview and other provisions of the act. These powers also are usually contained in the same deed with the mortgage, and to register the mortgage part of the deed in one book, and the power part in another book, would be inconvenient and idle. Admitting the proper book to have been selected, the power was well recorded; for it was recorded at length, as far as the mere power in question went, and nothing was omitted but the covenant at the foot of it, declaring the sale to be a perpetual bar. But if this be not the true construction of the act, I am satisfied that even the omission to record the power will not affect the sale. The only use in recording it, is for the benefit of the purchaser, and

D

ALBANY,
1804.

Bergen & ano.
v.
Bennett.

1 Inst. 52. b.

Laws of N. Y.
vol. i. Appendix, page 10.
Edit. of 1789.

ALBANY,
1804.

Bergen & ano.
v.
Bennett.

it does not lie with the mortgagor to object to the validity of the sale by reason of that omission. He can have no concern or interest to be affected, whether it be recorded or not. The next objection is, that the notice of the sale was not according to the directions of the act. It is alleged, that the proof of the six months' notice in the news-paper, and on the court-house door, is not as it ought to be, full and perfect; and some nice criticisms have been made upon its deficiency. I shall forbear entering into this examination. Considering the lapse of time since the publication was made, the proof of the notice is pretty well made out, and every defect may well be supplied by a reasonable presumption. I have, however, a short decisive answer to the whole objection; and that is, that after a mortgagor or his heir has lain by for 16 years, he shall not then be permitted to come in and question the regularity of the notice. Public convenience essentially requires that we should establish this principle. It would be too rigid and severe to exact all these minutiæ of proofs, after such a length of time. It was next urged, that the exceptions made and published in the conditions of sale, rendered the same void. The exceptions which have been deemed as of serious moment, (for I pass by the exception of the corn on the ground, and the 100 rails, as not requiring an answer) are, a drain for the collect of 10 feet wide, and certain terms imposed on the purchaser, who could not give sufficient security. I am not inclined to question the doctrine, that a mortgagee is bound to pursue his power strictly, and that, although he may sell part of the land at one time, and part at another, yet that he cannot clog and incumber the part that he sells, but must sell simply and unconditionally the whole interest, as the same was conveyed by the mortgagor. I cannot however intend, that this principle was violated in the present case. The exception of the 10 feet may, or may not, have been an incumbrance to the premises. It could not have been made, or intended as a benefit to the mortgagee, who became the purchaser; for the premises, it appears, were not bounded upon him. He could have had no motive. For the drain being excepted from the sale, would, if created then for the first time, have remained in the heir of the mortgagor, and it must still remain his property. I think, however, we ought to intend, after this distance of time at least, that this drain had antecedently existed, and was founded on usage, or was an ex-

Co. Litt. 113.
a. 1 Co. 173. b.
Digges' case.

ception in the previous deeds of the land. It is more probable then, *that* exception was put in for greater caution, and that the mortgagee himself had taken the premises subject to that exception. It would be unreasonable and impolitic, in my opinion, to disturb that sale at this day, by reason of a circumstance of such small moment, as a matter of fact, in which no fraud or gain can be imputed to the one party, or real injury to the other; and when, by fair intendment, the whole can be so easily reconciled with strict principle on the subject. The other objection is, that, by the conditions of sale, unreasonable terms were imposed on the purchasers, who could not give sufficient security. These sales at auction may be insisted on to be cash sales. The mortgagee may have his conveyance ready to execute, and may exact the money as soon as the land is struck off. If he is willing, however, to allow a credit to the purchaser, and if he be entitled to allow it, he may then, no doubt, dictate the terms and extent of the security, so as the same be not unreasonable. If the purchaser is not satisfied with these terms, he has only to advance the money which the mortgagee is entitled to demand, and if offered, bound to receive. But whether the mortgagee be entitled to sell upon credit and security, or is in all cases bound to exact the money immediately, it is unnecessary to decide; because the sale in question was not a sale upon credit, but a sale equivalent to a cash sale, since it was in reality a sale to the mortgagee himself. If he could not have sold upon security, but for cash only, these terms that were given out were null and void, and could have had no effect upon the sale, or upon the purchasers; and if he was entitled to sell on credit and security, I should not consider the terms imposed to have been so unreasonable, as that the sale ought now to be set aside, from that circumstance alone. I do not, therefore, consider these conditions of sale as forming any solid ground for the present bill, to set aside the sale and redeem. Another objection to the sale is, that the mortgagee was himself the purchaser; and it is a sound and established rule of equitable policy, that a trustee cannot himself be a purchaser of the trust estate, without leave from chancery; and the reason of the rule is, to bar the more effectually every avenue to fraud. This rule was recognized by this court in the cause of Munroe and others, vs. Allaire; but a distinction was there taken between the case of a suit against a trus-

ALBANY,
1804.

Bergen & ano.
v.
Bennett.

tee, to set aside a purchase, he having procured the formal legal title, as in the present case, and where a suit was by him commenced to complete his purchase, as in the case cited; and it was observed, that in the former case, and the observation is consequently applicable to the present case, that equity would not interfere as of course, to set aside the purchase; for although equity will not aid, it is not bound in every case to disturb such a purchaser. It has also been made a question, whether the rule would apply to the case of a trustee, who was himself a cestui que trust, and was obliged to purchase, in order to avoid a loss to himself by a sale at a less price. But I shall forbear for the present from giving any opinion, whether these distinctions are well taken or not, because the rule being admitted to be absolute and universal, it is still agreed, that the cestui que trust must come in a reasonable time to set aside the sale, or he will not be heard. What shall be termed a reasonable time, is not susceptible of a definite rule, but must, in a degree, depend upon the circumstances of the particular case, and be guided by sound discretion in the court. In this case, the cestui que trust comes after 16 years, finding it a gaining bargain, and being, all that time, under no legal disability. Is this coming within reasonable time, to set aside a sale on the ground of this technical rule of equity? Suppose the mortgagee, instead of selling the lands, had entered into possession of them, under the mortgage, and enjoyed them as his own: 20 years possession in such a case would have been a bar to a bill to redeem. This is a settled rule in chancery. And ought not 16 years possession, after a sale according to the directions of a statute, and which is a species of foreclosure by law, to be esteemed equal to 20 years possession, commencing without such solemnity? In the case of Wichalse, executor, vs. Short, the party came into chancery to redeem 11 years after a foreclosure, and that too on the ground of a parol declaration of the mortgagee, that he was willing to receive back his money; but the court of chancery held, (and the decree was affirmed in the house of lords) that the mortgagor came too late after a lapse of 11 years, and that it would be a bad precedent to open the foreclosure, as it would render the property, acquired under such circumstances, extremely precarious, and would be attended with mischievous consequences to the mortgagee, who, in the mean time relying on his title, had improved the estate, and

5 Vez. J. 680,
681, 2.

3 P. W. 287.
3 Bro. 641.

1 Bro. Par. Ca.
414. 2 Eq. Ca.
Abr. 177, S. C.

kept no account of the rents and profits. Such a practice would shake an abundance of titles. In the case, likewise, of Lants v. A. and W. Crispe, a rule to redeem was refused, after the mortgagor's acquiescence for six years, under a foreclosure by his own consent. These cases are certainly not stronger than the present, and I think the acquiescence of the cestui que trust in the purchase by the mortgagee, and which is necessarily presumed from his delay, ought now to conclude him. The allowing him to redeem, would establish a precedent much more impolitic, and inconvenient in its consequences, than the violation, in this case, of the rule, that a mortgagee shall *not* purchase. I conclude, therefore, under the circumstances of this case, none of the objections raised are sufficient to justify the setting aside the sale of 1784, and consequently that the decree of the court of chancery ought to be reversed, and that the bill below to redeem, be dismissed with costs.