## DEN EX DEM. WATSON v. MULFORD AND AL.

1. The certificate of Common Pleas to enable a Sheriff to execute a deed for lands sold by his predecessor, should *show on its face* every thing necessary to authorize the court to make such order.

2. A deed made under such certificate, should contain every requisite of a Sheriff's deed, and should therefore recite the execution upon which the sale was made.

3. To sustain such deed, there must be proof *aliunde* of the facts necessary to sustain it. As of the death or incapacity of the Sheriff, the payment of the money and the legality of the sale. In a deed by a sheriff, who made the sale, the recital of advertising and of the hours when sale was had, is sufficient *prima facie* proof, these facts being within *his* knowledge—but not so in a deed given by another sheriff.

4. It is necessary to sustain such deed, to show that no deed was given by the Sheriff who made the sale.

5. Proof of judgments and executions against M. in 1827, that Sheriff levied on and sold in same year one half of a mill as his property, at public sale to D., who paid the purchase money to the Sheriff, that D. occupied the premises from the date until his death in 1838, as tenant in common with W. the owner of the other half, who in divers ways recognized his title, and rented of D. his moiety of the premises, in a case where the Sheriff and D. were both dead, and no Sheriff's deed could be found, is not sufficient to warrant a *legal* presumption that such deed had been given for the moiety so sold. But it was held that as against W. who after D. died, had in 1839 procured a deed from M. the defendant in the executions, for the moiety sold by the Sheriff, it was sufficient evidence to go to the jury, from which *they might infer* that such Sheriff's deed had been given.

6. No lapse of time, short of the legal limitation of 20 years, will raise the *legal* presumption that the Sheriff's deed has been given, or the other necessary requisites of a judicial sale complied with, although the enjoyment has been according to the deed.

This was an ejectment for an undivided moiety of a saw mill and 28 acres of land in Salem county—tried at Salem Circuit, February, 1847. A verdict was taken for the plaintiff, with leave for defendants to move to set it aside and enter a nonsuit, if the court should be of opinion that the plaintiff was not entitled to recover.

Both parties claimed under Adam Minch, who was seized and possessed of the whole tract, until July 28, 1827, on which day

Den Watson v. Mulford and al.

Minch conveyed one moiety to John Watson, the lessor of the plaintiff, but this was not the moiety in dispute in this cause.

In 1827, five judgments were entered at the suit of different plaintiffs, in Salem County Common Pleas, against Minch, which were signed respectively June 6th, July 27, two on July 30, and one Nov. 20, in that year, on each of these executions *de bon et terr* were properly issued, and delivered to E. Smith Esqr. Sheriff of Salem, who returned the same with a levy on the premises in question under each.

Sheriff Smith, sometime before December 8, 1827, sold a moiety of the premises at Sheriff's Sale at public auction within Salem county, to Samuel Dare, who afterwards paid the purchase money, as was proved by Isaac Johnson, who carried the money to the Sheriff, and the receipt of the Sheriff given at the payment, was as follows:

"SALEM PLEAS.

"Sundry Plaintiffs )
   v.     } *On Fi. Fa. &c.*
Adam Minch. )

"Received Dec. 8th, 1827, of Mr. Samuel Dare (by the hands of Isaac Johnson, 3d) four hundred and fifty dollars, on account of purchase money for the real estate of the said Adam Minch, purchased by the said Samuel Dare at the Sheriff's sale thereof on the 4th instant.

$450.00.       EDWD. SMITH, *Sheriff.*"

After this sale, Dare occupied the premises until his death as tenant in common with Watson, who recognized him as owner, submitted a dispute between them about the profits of the mill to arbitrators, and at one time hired Dare's moiety of him, to which hiring he put an end by the following notice:

"To MR. SAMUEL DARE:—

*Sir*—You will please to take notice that I intend to give up your half of the saw mill now in my occupation in the township of Upper Alloways Creek, on the twenty-fifth day of March next.       Your friend,

February 17th, 1836.       JOHN WATSON."

After this, Dare and Watson used the mill alternately, each having it for one month.

Dare died in February, 1838, and his heirs conveyed his title in the premises to the defendant Mulford, whose tenant the other defendant was.

Minch, on the 21st of February, 1839, executed a conveyance to Watson, the lessor of the plaintiff, for the moiety of the premises so sold to Dare.

After Dare's death, no deed could be found from Sheriff Smith to him, though diligent search was made. Sheriff Smith nad died before Dare's death, and there was no direct proof that any such Sheriff's deed had been given, or that it had not been given.

In the May Term, A. D. 1846, the Common Pleas of Salem county, on the application of William C. Mulford, made the following order :

"INFERIOR COURT OF COMMON PLEAS, IN AND FOR THE COUNTY OF SALEM, OF THE TERM OF MAY, A. D. 1846.

"In a matter of the application of William C. Mulford, under the fifteenth section of an act entitled 'An act making lands liable to be sold for the payment of debts,' passed the 18th February, 1799, for an order for a certificate to the Sheriff of said county, to authorize said Sheriff to make, execute, and deliver to William C. Mulford a deed for the one equal undivided half part of a certain tract of land, &c. The court having heard the evidence, on motion of Thomas W. Mulford, attorney for said William C. Mulford, order that the clerk of said court make a certificate setting forth that sufficient proof hath been made to the said court, that Edward Smith, late high Sheriff of the said county of Salem, did on or about the fourth day of December, A. D. 1827, expose to sale and sell the one equal undivided half part of that certain parcel or tract of land with the sawmill-pond and appurtenances thereon and thereunto belonging, situate in the township of Upper Alloways Creek in the said county of Salem, adjoining lands of Thomas Sinnickson, Esq., and others, and said to contain twenty-seven acres, be the same more or less, by virtue of certain executions against

the same, issued out of the said court at the suit of sundry plaintiffs against one Adam Minch, defendant, that such sale was fairly and legally made; that Samuel Dare, late of said county of Salem, now deceased, then and there became, and was the purchaser of said land and premises, and that he afterwards paid all of the purchase money of said land and premises to the said Edward Smith, Sheriff as aforesaid; that the said Edward Smith afterwards departed from the said state, and has been unable by death to make a deed of conveyance for said land and premises, and that William C. Mulford, the applicant, is the legal representative of the said Samuel Dare, deceased."

In pursuance of this order, Robert Newell, the then Sheriff of Salem, made a deed to W. C. Mulford for the premises in question, dated May 19, 1846, which deed contained no recital of the execution by which the premises were sold by Sheriff Smith.

There was no evidence given of the price for which the premises were sold by Sheriff Smith, or that the sale was advertised, or that it sold between the hours of 12 and 5, nor under which, if any, of the executions given in evidence, the sale was made.

The motion to set aside the verdict was argued on the above statement of facts before the CHIEF JUSTICE, and NEVIUS and CARPENTER, JJ.

*R. P. Thompson*, for plaintiffs.

*Eakin*, for defendants.

Opinion of the court delivered by

CARPENTER, J. The case was argued upon the effect to be given to the instrument purporting to be a Sheriff's deed, made by Sheriff Newell, under the order of Salem Pleas of May Term, 1846. Both parties claim under Minch: the lessor of the plaintiff by deed from him dated 21st February, 1839. The defence is, that the premises in question were previously sold

by E. Smith, Sheriff of Salem to S. Dare, now deceased; but although it is said that Dare bid the property off at the Sheriff's sale, paid the money, and subsequently became possessed of the premises, no deed from the Sheriff to him can be found. An attempt has been made by Mulford, who claims under Dare, to supply this deficient link in his title by an application under the statute of the Common Pleas of the county of Salem. The statute in substance enacts, " that if any Sheriff after making sale of any real estate by virtue of an execution, &c. should by death or otherwise become incapable to make a deed for the same, it shall be lawful for any succeeding Sheriff, on receiving a certificate from the Common Pleas of such county, signed by the clerk by order of said court, setting forth that sufficient proof had been made to the court that such sale was fairly and legally made, and on tender of purchase money, or proof of payment, to sign, seal, and deliver to the said purchaser or his legal representative, a deed or conveyance of the lands, &c. so sold; which deed should be as good, valid, and have the same force and effect as if the Sheriff, who made such sale, had signed, sealed, and delivered a deed of conveyance for the same in due form of law." *Rev. L.* 434 § 15; *Rev. Stat.* 664 § 11.

It is scarcely necessary to express any opinion as to the form of the order made by the court of Common Pleas, or of the deed executed in pursuance of that order. It may, however, be proper to say, that they appear to have been drawn in haste, and are crude and informal. Everything necessary to authorize the court to make such order, should appear upon its face. The deed when made is a Sheriff's deed, intended to convey the title of property sold upon execution, it should therefore contain whatever is necessary or proper in a Sheriff's deed : thus it should recite the execution upon which the sale was made. *Rev. L.* 433, § 12; *Rev. Stat.* 662 § 8.

But the statute enacts that the deed, when so made, shall be as valid, and have the same force and effect as if made by the Sheriff, who made the sale. The deed supplies the legal necessity of a formal conveyance. It is when so made, under the circumstances and after the proof called for by the statute, the order and certificate being duly and properly made, that it is to

have this effect. Proof, therefore, that the sale was fairly and legally made; proof of payment, &c.; that the Sheriff by death or otherwise has become incapable, and that no deed was ever given; must be made to shew the foundation of the order, and to support the deed. So made, the deed has the same force and effect as if made by the Sheriff, who made the sale, not greater. If a deed had been produced, executed by Sheriff Smith, it would have been necessary to prove that the sale had been made upon some execution issued upon a valid judgment. The execution must not only be recited in the deed, but both judgment and execution must be produced in evidence. Proof that the sale was duly made between the hours prescribed by the statute, after having been duly advertised, may, it is true, be proved by the recital in the deed, when given by the officer who made the sale. Such recital being in the nature of a certificate by a public officer of his performance of official duty, is received as *prima facie* evidence, and dispenses with other proof. *Den* v. *Morse*, 7 *Halst.* 336; *Den* v. *Downam & Camblos*, 1 *Gr.* 136. Under this deed the same proof must be made, and it can receive no such aid from a recital, for the officer who gave the deed could not certify for the acts of another: nor has it been attempted.

In this case it is evident that the necessary proof has not been made. Although proof of a sale, there was none of its fairness or legality. There was no proof that it had been duly advertised; that it took place between the hours prescribed by law; that the sale was made to the highest bidder, though perhaps that might be inferred; or of any of the formalities which the law requires. There was no sufficient evidence that no deed was given by Sheriff Smith. Not finding any after search, might be evidence to show that the deed, if proved to exist, had been lost; but of itself it cannot be proof that such deed had never existed. The order, certificate and deed, not being supported by the proof required to shew the authority of the Pleas to make such order, were not competent evidence, and the defence, so far as it rests upon these proceedings, fails. If competent evidence, the deed was not accompanied by proof of the legality of the sale, and the result is the same.

But it may be said that after proof made of the sale, and pay-

ment of the purchase money, followed by possession by the purchaser and those under him for many years, a possession known to, and acquiesced in by the lessor of the plaintiff, a deed may be presumed. That it was the duty of the Sheriff to convey, and that Dare was entitled to a conveyance, and when the sale, so far as it depended upon the public act and the payment of the price, was made, followed by such possession, it at least is such a case as might be left to a jury to say whether as a matter of fact they did not believe that the Sheriff had complied with his duty and actually executed a conveyance. Indeed, it was part of the argument of the plaintiff's counsel, for the purpose of shewing that the Pleas had no authority to make the order which that court did make. If any evidence from which a deed can be presumed, this is sufficient evidence of its loss to excuse its production. It is evident that Dare paid the money, and was entitled to the conveyance; that his rights were well known to the lessor of the plaintiff, who for several years held the moiety in dispute under him as his tenant; and that lessor now comes before us with this claim under such circumstances, that I shall be glad to find any safe principle upon which the title of Mulford, who claims under Dare, his father-in-law, can be supported.

There are two distinct objects of proof which it is necessary to make in this case on the part of the defendants; the conveyance itself, and as has been already referred to to some extent, that the sale was not only made under due authority of law, but that it was made in the mode prescribed, and accompanied by the formalities of the law. If the deed be shewn, and the authority to sell, after a sufficient lapse of time it may be presumed that all the legal formalities of the sale have been observed. After twenty years acquiescence, by the heirs of an intestate in case of sale by an administrator, and the estate held under such sale, evidence having been given of the license to sell, it was presumed that the sale had been made with the formalities required by law. After a long acquiescence, a legal presumption of the regular exercise of the authority is accepted, instead of proof. *Gray* v. *Gardner*, 3 *Mass.* 399 ; *Knox* v. *Jenks*, 7 *Mass.* 488.

The doctrine was alluded to by *Ewing, C. J.* in *Den* v. *Morse*,

7 *Halst.* 336, where he says, in regard to the presumption that the Sheriff had advertised according to law, that he was not aware of such, unless perhaps in case of an ancient deed accompanied by possession. Indeed, unless the presumption be aided by some circumstances proper to be submitted to the consideration of a jury, it can only be after a lapse of considerable time, the period being generally adopted in analogy to the statute of limitations. Thus it was held, that livery of seizin could not be presumed in favor of the feoffee, unless after possession under the deed for at least twenty years; seventeen years being held insufficient. *Doe* v. *Marquis of Cleveland,* 9 *B. & C.* 864; see *Bider* v. *Loveday,* cited 1 *Vern.* 197; 1 *Grnl. Ev.* § 20; 2 *Cow. Phil. Ev. notes, p.* 362 *et seq.* But the presumption here referred to is one of law, and in which the court will take upon itself to instruct that no further proof of such formalities need or can be required. The lapse of sufficient time in such cases raises a conclusive presumption of the facts, that it might otherwise be necessary to shew by direct proof. The rule itself, it has been said, is nothing more than the principle of the statute of limitations expressed in a different form, and applied to other subjects. What may be submitted to a jury as the grounds of presumption to be drawn by them, circumstances from which they may be permitted to infer further facts, in the nature of the case, can ordinarily be limited by no precise period of time; and the principles will apply with the same effect, to the fact of whether a deed has been actually given, as to the presumption of the formalities which should accompany it. What may be sufficient to authorize the presumption of the former, may at the same time sanction the presumption of the latter. Presumption on mere possession for less than twenty years, would be to supersede the statute of limitations; but there may be other striking circumstances which are far from depending merely on possession and time. There is a case in which on sale of mortgaged premises under a power, after acquiescence of sixteen years, it was held that it might be presumed that the notices of sale had been regularly posted and published. *Bergen* v. *Bennet,* 1 *Caines Cas.* 1, 18. The case may be questioned to the extent to which the principle was an-

nounced as a conclusion of law, though probably rightly applied to the circumstances of the case ; and undoubtedly the circumstances should be full and cogent, to raise the presumption, or to authorize it to be submitted to a jury within the period fixed by the statute of limitations. My mind has labored whether it could be submitted in the present case, but I incline to the conclusion that it may, as against the lessor of the plaintiff. Dare bid off the property at Sheriff's sale in 1827, paid the money, and immediately, or very shortly after, went into possession. He held possession till his death in 1838, when his title and possession fell to his heirs. Subsequent to the sale, he occupied the premises jointly with the lessor of the plaintiff, and a dispute with regard to the profits was referred to, and settled by arbitrators selected by them. Not only so, but for some time, and until 25th March, 1836, (the period does not, so far as I recollect, appear in the case,) Watson, the lessor of the plaintiff, held Davis' moiety as his tenant, which tenancy he thus relinquished. Dare died in 1838, his heirs succeed him, but the deed from the Sheriff cannot be found, and then on 21st Feb. 1839 Watson, with all his knowledge of the character of Dare's title, procures a deed for this same moiety, which he had held under Dare, from the absent and insolvent Minch : such I conclude we may safely style him with the list of judgments and executions against him, which have been given in evidence in this case. Subsequently, this action of ejectment is brought by Watson after the claim of title so acquired. We think under these pregnant circumstances as against Watson, it might be left to the jury to say, whether they would not presume the delivery of the deed by Smith to Dare under the formalities required by law. But it is a question that can only be settled by a jury, and we must therefore send it down again for trial, notwithstanding the agreement upon which the case was made below.

The CHIEF JUSTICE, and NEVIUS, J. concurred.

Verdict set aside and new trial granted.

CITED in *Den* v. *Philhown,* 4 *Zab.* 800–805.